Your Honor, I'm representing Beverly Dogsleep in this case. Your name is? I'm Jim Tree. That's a good idea to get that. You won't get billable credit. Well, that's important. It is. I'm Jim Tree, and I'm happy to be here today, Your Honor, on behalf of Beverly Dogsleep. This case has been going on for quite a few years. She actually had a hearing back in 1996 where the first ALJ, L.J. Little, found her disabled for a closed period of time after a serious automobile accident. There had been no development in that case, though, of her brain injury, her closed head injury, and it was only looking at her physical impairments. The judge found that even after her closed period of disability ended, that she was still limited to less than a full range of sedentary work, that she couldn't do more than sedentary work, and in addition, she had a right arm impairment where she couldn't use her right arm for prolonged activities. That was significant because in the second ALJ decision, which was before ALJ Allen, Denny Allen, he found that she could do heavy work, but that she did have mental impairments at this time and her mental impairments hadn't developed, that she would be limited to simple routine work. We took that case to the federal court, and federal judge, senior judge Allen McDonald, said that, no, res judicata would bar her being limited or her being able to do heavy work. There's been no evidence of any changed circumstances. She's still limited to sedentary work, and in addition, she has these mental impairments. And also said res judicata also holds intact the finding that she has right arm impairments that prohibit her from using her right arm for prolonged periods. Then it goes back to a third ALJ, which is ALJ Hines. Well, ALJ Hines did not give res judicata effect that Judge McDonald ordered in his decision regarding the right arm impairment and no prolonged use of the right arm. However, he did find a finding that she was limited to sedentary work. He had called a medical expert at the hearing who confirmed, a neurologist, I believe, that she was limited to sedentary work by her very restricted airway passage that she had from her accident. She could hardly breathe, and you could hear her breathing just. Let me just sort of fast forward to the last hearing. What you're describing now is the exertional impairments, and it seems like the ALJ's hypothetical includes those exertional impairments. What did the ALJ do wrong with that hypothetical? That seems to be the crux of the issue. His hypothetical was sedentary work, simple and repetitive, the last ALJ. And I think some of the things that are wrong is he didn't include the right arm impairment, no prolonged use of the right arm. That wasn't included, but that was a finding of the federal court, Judge McDonald, that in fact was a finding and had res judicata effect. And so he didn't include that. Slow to moderate pace. That's very important because this is not a case where the judge rejected these RFC findings of the psychologist Arch Bradley or the DDS psychologist. He cites them with approval. And so what we're looking at is whether or not he accommodated the limitations of these psychologists in his simple and repetitive finding of RFC. Why isn't the simple and repetitive enough to encompass the cognitive difficulties, given Dr. Bradley's statement that she was capable of simple and repetitive work? That was sort of his summary of her cognitive difficulties. At 20 CFR 416.968A and B, the Social Security Administration defines unskilled and semi-skilled work. And under unskilled, they do acquaint it with simple duties, but there's no mention of repetitive work. The repetitive work is defined under subsection B, semi-skilled work, that just the nature of repetitive work with its fast pace could rise the level to a semi-skilled activity. And so here when we're talking about pace, I mean, that's one of the key things. That does not equate to simple and repetitive. In fact, simple and repetitive requires fast pace. And here we're looking at somebody that is limited to sedentary, unskilled, simple work, repetitive, so she's got to do it at fast pace, but all of her testing shows she does things at slow pace. That's her big problem area is the processing and being able to do things in a fast pace. She can't do it. She can only do slow to moderate pace. And so that doesn't equate to simple and repetitive. That's quite the opposite of simple and repetitive, because simple and repetitive jobs typically require fast pace. That's a hallmark of simple and repetitive. Hey, you're unskilled. We're hiring an unskilled worker here. We've got a repetitive product here that you have to do. It's the same thing over and over again. Get it done quickly. Get it out now. What do we make of Dr. Haynes' aimless testimony that he appeared at the hearing and he said there's no residual neurological problems with this claimant? Well, he went on to say that she was limited to sedentary to light work, and then he went on to say she's limited to lifting 10 pounds and can't be on her feet throughout the day. So that's, for Social Security purposes, that's sedentary work. And he said she did have the problems with the breathing, and so that confirms what Judge McDonald said, that race judicata requires us to go to sedentary. The ALJ found she was limited to sedentary, so that's really not in dispute, I don't think, in this case. But if she has no neurological impairments, if that's what Dr. Haynes stated, or that the residual neurological impairments have now gone away, does that mean it's no longer the case that she's limited to the slow pace and the other cognitive difficulties that some of the doctors indicated? No, I don't think so at all. He said he wasn't going to give an opinion regarding her mental impairments. He specifically said that in his testimony.  She says she has some, but I'm not qualified to believe it's what he said. There are some other areas that we don't believe that the judge accommodated the RFC for, the residual functional capacity. Another one was superficial public contact. The DDS psychologist specifically said she needed superficial public contact. The judge did not put that in his hypothetical to the vocational expert, and did not find that in his RFC, although he quoted with approval the DDS physicians that said she had this limitation. In fact, in the defendant's brief at page 17, the commissioner states that the correct RFC is simple, routine work with superficial public contact. And so the commissioner agrees that is the correct RFC, but yet the ALJ doesn't say anything about superficial public contact, which is important because if you don't present all of the limitations to the VE, the case law in the Ninth Circuit says it has no evidentiary value, the VE's testimony. Then there's five moderates, six moderates on the mental residual functional capacity form at 472 to 474. Those are important because the judge didn't reject those. He cited with approval the DDS psychologist. Two of those equate to simple, repetitive work, but the other four don't. They are into areas of attention and concentration and judgment and other areas that don't necessarily equate to simple and repetitive work. And the vocational expert was asked specifically at the hearing, a limitation at numbers 3, 5, 6, 12, 17, 20 on the mental residual functional capacity, what effect, he said, it would mean that the person would not be employable. And so, therefore, we have a specific limitation that wasn't rejected by the ALJ. In fact, he cited with approval the DDS psychologist, and the vocational expert was asked those specific limitations and said no jobs. Again, the judge did not present to the vocational expert the limitations that Judge McDonald found on the prolonged use of the right arm. Now, the three jobs that were identified by the vocational expert, I just want to talk briefly about that. Even if the judge had properly accommodated by saying simple and repetitive, these three jobs are not appropriate. All of them require a reasoning 3 level. The commissioner in their brief simply stated, well, that's contrary to our regulations because our regulations say that simple work is unskilled work. What they didn't say is that there's nowhere in that subsection A where it talks about repetitive work, and that was the ALJ-specific finding, simple and repetitive. But in subsection B, under semi-skilled, it talks about repetitive work. And so there is at least a conflict between the DOT and what this vocational expert testified to, that these are reasoning level 3 jobs that require simple and repetitive work, and the DOT says these aren't simple and repetitive jobs. And so the judge had a duty, just the same as in this last case under SSR 00-04P, to ask the vocational expert, does your testimony conflict with the dictionary of occupational title? He didn't even ask him that. That wasn't brought up in this case. But it did conflict with it. The V.E. did not use any persuasive evidence according to the rulings or the Johnson case law in the Ninth Circuit. Thank you. I'm sorry. You can come up. I need one of my clerks. Brian, can you come up? My glasses just broke, so I need to get my other pair. Could you just bring up my other pair? All right. Sorry, I didn't mean to distract you. I'm semi-blind without. Go ahead. May it please the Court. My name is Terry Shea. I'm appearing for the Commissioner of Social Security. The issue in this case seems to be who's most qualified to assess the limitations the claimant is going to be limited to. Is it going to be the medical experts or the vocational experts? And part of the problem is that there's kind of three levels of assessment that go into that analysis. There's the examining and treating medical evidence in the record, and then there are the medical experts at the state agencies who look at that and fill out several levels of forms. The first level is a long level of forms trying to go into each and every task that a person might encounter in a daily work situation. And they condense those into the B criteria, which is the activities of daily living, socialization, persistence, you know, pace, persistence, concentration, and evidence of decompensation. Basically, we don't, you know, there have been a couple of ways of tweaking that to try to move it from the or to be more consistent with the term of art under which those things are assessed and the plain language under which the old moderate used to be called often. And the plain language meaning of often meant it happened every day, it happened all the time. So how could you possibly call that inability to work? And there would always be that or there was for a long time that mismatch of that term. So basically back in the 2000 change in the regulations, basically they updated the language and moved from the word often to the word moderate. And what they were trying to convey is that we're not saying at this mid-level of restriction that this person is precluded from maintaining full-time employment. In this case. But there were specific findings that the medical experts made, and I'm not sure why, how they were included in just the simple language of the ALJ's hypothetical simple repetitive work. Well, that was their own little summation of what their restrictions came to. The ALJ, but when Mr. Tree added in these other factors taken specifically from the medical reports, the vocational experts said no, she would be precluded from work. And so I have a question about how the hypothetical leaving out all of these cognitive difficulties that were identified by the doctors could be adequate given that the vocational expert himself or herself indicated that with the additional facts he reached a different result. And are we talking about the state agency assessment you're on? Well, there was one by Dr. Bradley. All right, Dr. Bradley. And then there was the two by Bailey and McRae who didn't disagree with Dr. Bradley. So it did appear that there was consistent analysis by the medical experts about her cognitive limitations. Yeah, basically our response to that is that, you know, if you look at Dr. McRae's or the psychologist McRae's report, which is I believe 459 to 461, it's a lot more upbeat than that. It basically says she may have these problems, she may have those problems. It would best be accommodated in this way. And the DDS experts looked at that information and took their own assessment as well and said, well, we think that simple routine tasks or simple repetitive tasks would accommodate those problems. I guess the question, it seemed undisputed that she had some visual difficulties, and yet one of the jobs under the simple repetitive work was surveillance system monitor, which the VE then said, well, of course she can't do that if she has these visual processing problems. So it didn't seem that the ALJ's hypothetical had captured all of the limitations that were reflected in the medical records. Well, you know, at this, you have to look back at the assessments of the visual problems as well. She did have injuries in the accident. They did improve to some extent. I guess she was left with residual cross-eyed problem. But she still had, I think her vision went up to 20-30. And I thought the, you know, I could have it factually wrong, but I thought that their main worry about the monitor, surveillance system monitor was the concentration and attending to the task, not particularly that she wouldn't be able to see it. The ALJ did point out that she drives. So her, you know, there doesn't appear to be a lot of residuals to that sort of vision problem, and I don't recall that plaintiff made that as part of their argument. But, you know, I think the ALJ addressed that. I think that the evidence showed that there was improvement over time in that, that particular problem. But, yes, obviously, vision problems can always be an issue if they are continuing and they're residual and they're severe, that would certainly need to be considered. So how, where in the, what would you isolate in the hypothetical that addresses the cognitive function that you understand they were contending? Well, the simple tasks. The simple tasks. That's enough. Yes. All right. Thank you. You're welcome. Okay. I'll give you a minute on rebuttal. I did want to clarify that when you'd asked me, Your Honor, about the medical expert at the hearing at page 525, he said he did review the psychological evaluation. He didn't see that it met a listing. We don't argue that it didn't meet a listing. There was specific limitations. Then the judge redirected him and said, I don't want you to testify purely for psychological. You know, he's called him here as a medical expert, MD type thing. And the other thing I wanted to talk about, if I could just real briefly, is the, on the, I noticed that there was an adverse credibility finding simply because, basically for three reasons. One is because her activities of daily living were not consistent. But I read through her activities of daily living. I didn't see anything inconsistent. In fact, the DDS, two DDS psychologists that reviewed it specifically wrote on their form, she appears credible after they reviewed her activities of daily living, which was already in the file when they reviewed the file. The other thing that the judge said about that was that because no doctor said that she was totally disabled. Well, they did in a way because they gave these limitations, and then the vocational expert said with those limitations she can't work. Okay. I think that's in your brief. Thank you. Thank you. Thank you both, counsel. Appreciate the argument. The case is submitted.
judges: Fisher, Gould, Ikuta